Solution, LLC, also known as Torres AS, LLC, and SPAT Torres. Mr. Block for the appellant, Ms. Hirsch for the appellees. Good morning, your honors. I'm Scott Block. I represent David Sickle and Matthew Elliott, the plaintiffs. May it please the court. My clients served their country honorably in two theaters of war as contractors working in support of the United States military. Mr. Sickle was a decorated Navy medic for 27 years and then after that for about a decade worked for various large contracting companies in both Afghanistan and Iraq as medics on embassies and other forward operating bases as he worked on here. Mr. Elliott is a skilled kennel master who has his own company that serves local law enforcement as well as the federal government in training canine units and bomb sniffing dogs. If my clients had been fired as they were in this case and there had been no back injury of Mr. Elliott at forward operating base Shield in Iraq, they would simply have a breach of against the backdrop of an injury on the job in no way implicates the remedies of the Defense Base Act or DBA as has been asserted in this case by the defendants and then by the district court. So you rely on some language in our decision in Brink in terms of independent claims. Your counsel on the other side reads that same language quite differently. Your response is simply to repeat your original point but I suppose the question is whether the way these preemption statutes have been interpreted as quid pro quo, it's almost a hydra-headed type preemption and as I read Brink, it was offering the possibility for those two claims to go forward because they were not interrelated in any way to an injury on or because of employment. I think you're right, Your Honor. It is hydra-headed but I think we have to drill down and look at the facts of Brink. There were six cases that the court allowed to survive and remanded. The three of them were ADA cases, Americans with Disabilities Act cases and those necessarily are intertwined with an injury on the job. Well, did they survive on more than a remand in connection with why the district court did not allow an amendment to the complaint? That's correct but it was clear in the law. So I don't think that really helps you. It's the other two plaintiffs. Well, there were three. Three others. Well, to which the court specifically referred the woman who was running the nursing home and she had a separate contract to get certain services that she didn't get and then the assault that occurred, one of the male plaintiffs. Ron Bell, that's correct but you had another assault claim, Christine Holguin-Louge. Two or three. Completely separate is what I'm trying to get from any injury arising on or in connection with. That's what you've got to overcome, don't you? Well, they weren't completely separate. Ron Bell had an injury on the job. He had a knee injury and PTSD. He claimed PTSD. We sent the information to KBR. They sent two goons out. What was the context of the assault? They sent two goons out to threaten him about his PTSD claim. So your client, you think, falls within that realm? Absolutely. They were threatened and actually terminated for not recanting an injury report on the job as well as having an injury at all, even though he hadn't made a formal claim yet, having impliedly asserted that he had a claim on the job. In addition to that, the contract claim in Brink was a contract with CNA Insurance to help Daniel Brink, who had the DBA injury, with his benefits. It was all about the DBA claim, but it arose independently because there was an independent contract claim that didn't depend on there being an injury on the job to assert the claim. It's not within the DBA because if you look at the text... When you say there was an independent contract, what was it? Well, this nurse case manager, Nikki Poole, was hired to help him with... No, I'm talking about your case. Oh, we have an independent contract with the employer. I know. Your client was hired for one year and then a second year. That Mr. Sickle was and Mr. Elliott had one year. In connection with... I'm sorry? In connection with his subcontractor. Those are the only two contracts. Those are the two contracts, that's correct. In connection with his employment. Right. So those are contract claims. They don't depend on there being an injury on the job to have a contract with the employer. In the Department of Labor and the Benefits Review Board, that is the appellate court essentially right across the street here, for those cases has held that the administrative law judge and people within the Department of Labor are powerless to make rulings on breach of contract issues. Powerless. And we've cited that Machado case in our briefs. This case arises out of a breach of contract and wrongful discharge. The breaches in the contract are clear. They have to give written notice of termination for cause. A material breach is the terminology in Section 7.2. They didn't do it. My clients have rights to sue for damages under contract law and we also have a claim for breach of the covenant of good faith and fair dealing. These are common law claims that are not foreclosed by the Defense Base Act or the Longshore Act. Part of your contract claim is an absence of notice. So I could see how in theory that would be independent of what's bound up in the retaliation. But then it sounds like part of your state law actions are completely bound up with the retaliation allegation under 948A. And as to those under Brink, it's hard to see how those claims can go forward in the wake of a decision in Brink that said that if something's bound up in the remedial scheme under the DBA slash Longshore Act, then it's preempted by virtue of the exclusivity provisions. Well, I believe that that's not the holding in Brink because 948A was not specifically essential to that decision. And it is clear that this is not an exclusive or fully preemptive scheme. It is very limited by its very terms. If you look at the language of 948A, it only applies to someone who testified or is about to testify about an actual proceeding before the Department of Labor. That's how the Labor Department interprets that statute. You have to have a claim file. You brought a 948A claim, right? No. There's not a 948A claim in the complaint? Oh, in this complaint? Yeah. I thought you meant before the Department of Labor. No, not as such. Is it counted toward 948A? That is the supporting statute for public policy purposes, but it's not a claim under the statute. We're not proceeding under the federal law. We're using that federal law as a basis for public policy wrongful discharge. The District of Columbia law is, unlike some other states, that you can base your... I'm not understanding because it sounds like you're saying, I must be missing something, because it sounds like you're saying at the same time, 948A, we either have a claim or it supports a claim. I'm not sure I understand the difference, but we either have a claim or it supports a claim that we're bringing, but then on the other hand, 948A doesn't cover anything. And I don't understand how you can be... Let me make a distinction. I make a distinction here, Your Honor, between bringing an administrative claim for the Department of Labor under Section 948A, having a 9... We call it a 948A proceeding. Didn't do that. That's not what this case is. This case is wrongful discharge. There are two separate counts. One of them is retaliatory discharge based on public policy. The District of Columbia allows you to rely upon a federal statute for your public policy, the public policy being we don't like people to be wrongfully discharged for claiming injuries. So that is the distinction. Just because we invoke the statute as the basis for the public policy does not mean we're proceeding under 948A and believe that it was applicable and binding in this case before the Department of Labor, because by its very terms, it's not. Mr. Sickle was not testifying and he wasn't about to testify. Mr. Elliott had not filed a claim and he was not qualified to do the functions of the job and therefore he cannot fall within 948A. He's not allowed to. In addition... But it's still... Even though your own people don't fall within 948A at all, 948A still is the support for your public policy claim? One of the claims, yes. There's one count for... How can it be support for a public policy claim if the statute doesn't even cover it? Because Congress put forth a statute that expressed a policy not to fire people who have injuries on the job. That's why. Even though it didn't fall within the express way in which you can access it before the Department of Labor, you can certainly invoke it as evidence of the public policy of the United States. That's the difference. And if you look again, 948A is not within the Exclusive Remedy Provision. The Exclusive Remedy Provision of Longshore Act and the DBA, which is not an additional Exclusive Remedy Provision, it only applies to workers' compensation in the states. The Exclusive Remedy Provision under 905A says that this is an exclusive remedy, i.e. the medical benefits and temporary total disability and permanent disability you might be entitled to, is exclusive on account of the injury on the job in the course and scope of your employment. Not exclusive for any other items we might have, you know, appearing in this act, having to do with other items like your job or back pay for retaliation. The Exclusive Remedy only pertains to injuries on the job, and that is the scope of the Exclusive Remedy as interpreted by all the case law. And proof of this is to be found in all the cases we cited where the courts allow other claims to go forward in addition to the DBA and Longshore Act, such as ADA, Title VII, disability claims under Social Security, private disability insurance claims, breach of contract, intentional affliction of mental and emotional distress, intentional torts for those with deliberate intent to injure. There are so many that the exceptions create a whole new area of law. What about our decision in Hill, in Hall? Oh, Hall. Well, again, Brink, we come back to Brink. No, I meant Hall. No, I know, but I'm saying what Brink said about Hall. It quoted Hall. Right. We note, this is the Brink Court talking, we note as the appellees acknowledge that Hall does not preclude individual appellants from pursuing claims that arise independently of an entitlement to benefits under the Longshore Act. And then it goes into such as common law assault, breach of contract, et cetera. And of course it doesn't, because the Act itself tells you what is exclusive. Only injuries on the job, the benefits that you can get in the Longshore Act. And Hall was all about foreclosing bad faith claims for administration of benefits. It extended that. Do you have a copy of Brink in front of you, or Hall in front of you? I don't have any of the cases. Well, in any event, you're referencing Brink, which is talking about Hall. And it says, all the tort claims, including intentional tort claims, fall within the statutory exclusivity provisions. Now, you may disagree with this court's interpretation of the statutory text, but that is the interpretation we have adopted, is it not? Well, I would disagree with that. Disagree with what? I'm sorry? Disagree with what? The interpretation of Hall as foreclosing all intentional torts. Hall itself cited to the case law that preceded it that found that if there's a genuine intentional tort, District of Columbia, federal precedent, if there's a genuine intentional tort, i.e. a deliberate intent to injure, as opposed to bad faith claims, and that's the distinction that Hall was trying to make. And at the very end of Hall, you'll note that they do say, but see, citing to the Martin and Atkinson exceptions. So they don't foreclose that there's any other kind of claim that can be brought. But when it comes to the injury on the job, Hall is very restrictive. I will agree with that. But Brink clarifies it and says, we don't mean that if it's an independent cause of action that doesn't depend on there being an injury on the job to have it. You don't have to have an injury on the job. One thing we know from Brink is that it's not just limited to injury on the job because it also covers the administration of benefits that arise from injuries on the job. But it determined that it was dependent on the injury on the job to have those benefits. It's all part of the scheme of the Department of Labor. My point is simply that it would be one thing to say that preemption is limited to injuries on the job. We already know under Brink that it covers a penumbra more broad than that. I take it your argument is that while it might cover a penumbra more broad than that, that's intimately related to administration of benefits but it doesn't go so far as to cover retaliation. Right. Or all the other case law that I've cited to you, ADA, Title VII, Social Security Disability Benefits, Third Party Actions, Jones Act. The list is endless of the claims you can bring while also having a work-related claim under Longshore. It's obviously true that you can bring state law claims that are about the administration of benefits because that was Brink. You can style them as state law claims but if they're state law claims that ultimately are about the administration of benefits, then they're out under the exclusivity provisions. That's what Brink tells us. Of course, but that doesn't foreclose other causes of action. So it's not just the fact that it's a state law claim. It's not just the fact that it's a breach of contract claim. It's not just the fact that it's an intentional tort claim. You have to look to see what kind of breach of contract claim it is or what kind of intentional tort claim it is to decide whether it's sufficiently bound up in the exclusivity provision. Right. If you're trying to redress a bad faith claim as some independent tort or independent contract claim, that's not going to work. Brink is clear about that. Right. So I'm going to reserve some time for rebuttal, but because there was no administrative remedy here that claims were required to pursue or indeed they could pursue and because their claims are not preempted because they are contract claims and are outside the ambit of the DBA longshore exclusivity, the court should reverse and remand for a trial on the merits. All right. Why don't we hear from counsel for our police. I'll give you a couple of minutes. Good morning, your honors. I'm Rachel Hirsch. I am counsel for Scott Torres and Torres Advanced Enterprises LLC. May I please the court? I think to start, Judge Rogers, you touched upon what the theme of this case is. Why are we here? How is this case different from the decision in Brink? And we would submit that it's not any different. In fact, both cases were presented by the same counsel, were drafted at the same time and involved the same claims. The Brink case was the second vending complaint which is the operative complaint in that case was actually filed two weeks after the first vending complaint was filed in this case. So it's not like counsel had the benefit of the Brink's decision and was able to redraft this complaint to make it cure the deficiencies that were present in Brink. In the same case, there's no difference here. There's nothing that militates a different decision. Why? Because all the claims in this case arise from the DBA injury. Now, appellants may want to take the contrary position here, which Judge Brown-Jackson recognized in her opinion as being nonsensical that the claims don't arise under the DBA. But it's very clear from looking at the language of the complaint itself that this is a DBA claim. In fact, in the very first page of the complaint, paragraph two, it says these actions arise from actions taken by the defendants and discharging the plaintiffs for exercising their rights under the DBA and the Longshore Harbor Work Miscompensation Act. Every count in the complaint... Could Mr. Sickle have filed a claim? I'm sorry? Could Mr. Sickle have filed a claim? Separately from this... Could he just all by himself have filed a claim? He could have filed a claim under the DBA for sure because he... Where? With the Department of Labor. On what basis? Because he provided a report that was used to support the filing... But what provision in the DBA protects doing that? That's section 948A. 948A applies to testifying in proceedings before the board. The complaint itself, if you look at the allocation of the complaint... I know what the complaint is. What I'm saying is it's a matter of statutory law. There's no basis for Mr. Sickle to have filed a complaint. I would disagree, Your Honor, because if we look at this remedial statute, we have to construe it liberally and we can't have... How liberally? How liberally am I supposed to construe testifying, planning to testify before the board? Do you want me to construe that to mean actually doing anything related to a claim? Well, he filed a report that was attached as an affidavit or as a... But it wasn't remotely close to testifying in the proceeding before the board. Well, the statute itself doesn't say it has to be oral testimony. It says testifying or about to testify, which he did. He filed a report which was sent to... which was faxed to the U.S. in May and as we know from the complaint, the allocation of the complaint, Mr. Elliott had actually filed his EBA claim sometime in between April 30th when he returned home and May 9th when... There's lots of... Congress has written lots of anti-retaliation provisions and most of them are written much more broadly to encompass exactly the type of thing that Mr. Sickle did. And so we have to respect the fact that Congress used distinctly narrower language here and he wrote a report. Was that report under oath? Your Honor, we don't have the details from the complaint of whether it was under oath but the complaint itself fashions this as a DBA claim. It says that Mr. Sickle is subject to the DBA. If we look at the very first... I understand what the complaint says but it has separate claims as well by Mr. Sickle involving contract. I'm trying to take issue with your first point which was that Mr. Sickle at least had any basis whatsoever for proceeding under this statutory scheme. Well, again, I would go back to that. We would submit that the separate counts are not actually separate. They all have a direct nexus to the retaliatory discharge claim. The language in the complaint talks about the fact that the breaches occurred. There are many breaches that are listed in the breach of contract claim. We're not actually sure if it's a pure contract claim or a tort claim. In fact, it includes language such as was in the language  that was dismissed for bad faith and tortious breach of covenant of good faith and fair dealing. The reason why it was fashioned that way, of course, is because if it was a pure contract claim and the claim arose from breach of contract under the contract that Mr. Sickle entered into with Torres, he would have had to bring that claim in the Eastern District of Virginia. So the reason why... You've long since abandoned all your venue objections in this case. You have all kinds of venue objections you could have raised but you've never raised them. I'm not making the venue objection now, Your Honor. I'm saying the reason why it was fashioned that way was on purpose. It was intentional. We did, in the merits of our argument which the court did not reach, having found that the DBA preempted the common law claims, we did make the argument that they didn't allege a breach of contract. We don't even know that there's a breach of contract or if it's a tortious breach. We're not sure what it's saying. It's not our position or the court's position to step into the shoes of the lawyer and say this is what you meant to say. We can only take reasonable inferences. Is that right that Mr. Sickle entered into a brand new contract with your client after the injury in this case? Correct. Had he already submitted this letter before that? He had, according to the complaint. So the contract that he alleges was breached is one that completely post-states the events giving rise to the Longshore Act and ASAC. Correct. The retaliation that he alleged after he entered into that contract harkens back to the fact that he had done that because he retaliated allegedly because he had filed this report. The defense had taken the position that the report was filed falsely and it was a false claim and that's why he was terminated, but not because they were trying to intimidate him to recount the report as he alleged. But the intimidation that is alleged harkens back to the DBA claim. There wouldn't have been intimidation for the fact that Mr. Sickle filed this report that was used as testimony. Used as testimony where? In the DBA claim that was filed in D.C. by Mr. Elliott. It was introduced as evidence as testimony? Yes, Your Honor. I think the complaint itself says that it was faxed to Mr. Elliott during that time of May and the fax report actually... That was in a D.C. court proceeding, not a labor board proceeding? It was a... I think it was a labor board proceeding as far as I understand. I'm not sure from the facts of the complaint otherwise. They don't give us detail about where the DBA claim occurred except that it was filed in D.C. we're assuming from the Department of Labor. And actually it's a correct assumption to make because they say that Mr. Elliott actually received DBA benefits and given the fact that it was the Department of Labor that was empowered to do so, we can assume that that's where it was filed. I have just a question for you as well. I know the statutes provide that if an employer if a claim has been adjudicated to have been falsely filed, then the employer can fire somebody. Where is that adjudication supposed to take place? Does it take place before the Department of Labor? Or is an employer supposed to get that adjudication? To clarify, Your Honor, are you referring to 948A that talks about false reports? Yes. I believe that's supposed to occur before the Department of Labor as well. Are you a party to that proceeding? Your Honor, we didn't personally represent the... I believe they were. I believe they were. I think there was some proceeding that took place and of course... But there was no adjudication that the claim was falsely filed, obviously. I don't know the answer to that, Your Honor. I don't know. I know that was a defense that was raised. He wouldn't have gotten benefits if the claim was falsely filed. That's possible. I know the defense was raised. I don't know... Possible? Really? Can you get benefits for falsely filed claims? I'm assuming not. But I know that was in the complaint itself that says that the counsel for the defense had represented that the reason that there was a termination was because it was a false report and falsely filed. Never saw any review of the board termination. I'm sorry? He never saw any review of the board termination? He did not. He did not. No, the company did not either. The company... I don't believe they did. As far as I know, I don't believe they did either. Can I ask about the exclusivity preemption argument? Because the exclusivity provision in the Longshore Act which is 905A talks about the liability of an employer prescribed in Section 904. So 948A is not 904. So it doesn't seem like there's any express preemption unless I'm missing something because the exclusivity provision just doesn't reach 948A. Or claims like 948, retaliation type of claims like 948A. Correct. I think we have to look to the DBA which incorporates the Longshore Harbor Missing Compensation Act and its provision. The DBA itself in 1651C has a very broad exclusivity provision that extends the benefits that employees receive. It's actually narrower. I think it's narrower because it talks about under the Workman's Compensation laws. Actually, if the Court refers to Ross v. Dine Court, there is, when they describe 1651C and I'm happy to provide the pin site, they actually say that it's exclusive without regard to the Workman's Compensation laws of the state or jurisdiction. I'm happy to provide the pin site for that. What are they talking about? I'm sorry? That's not a decision of this Court. The D.C. Circuit? Ross v. Dine Court? The sub-site. The Ross v. Dine Court. I don't have it in front of me at the moment. I'm happy to look it up. It does say in 1651-352 that the DBA provides the sole source of liability for employers without regard to the Workman's Compensation law. I think it's a D.C. District Court decision. It might have said that. I'm just reading the statute. The statute speaks in terms of liability shall not be exclusive, but then it goes on to say under the Workman's Compensation law of any state which seems quite narrow. In fact, as I read Brink, what happened is that you start with the DBA exclusivity provision and then you incorporate the Longshore Act exclusivity provision as a way of expanding the scope of exclusivity. The question for us is, as expanded, when you double up, when you get both the exclusivity under 1651-A and the exclusivity under 905, do you go far enough to encompass the claims in this case? I believe you do. I guess the question is, how does it cover 948-A or 948-A style claims like retaliation claims when both, when 1651-A speaks in terms of Worker's Compensation laws, which doesn't seem to have to do with that, and then 905-A talks about liability prescribed in section 904 and then it says except that if an employer fails to secure payment of compensation as required by this chapter, which also speaks in terms of what an employer does under Worker's Compensation scheme, they all seem bound up in the Administration of Worker's Compensation Benefits and this seems something that's arguably different from that because it has to do with an action that comes along later which is a retaliation action. Well, I think the Brink Court actually looked at it and said there was exclusivity given looking at Not with respect to retaliation. Well, the claim in Brink was also 948-A. No, no. Well, the 948-A claim I get because, first of all, the other side is saying they're not even making the 948-A claim, but even assuming they are, I understand that there's an exhaustion argument as to 948-A. That I understand. I guess the question is if you have a state law claim that's making retaliation-like allegations, does that claim come within the fold of preemption by virtue of the exclusivity provisions? And that's where I'm not entirely clear as to how it would because the exclusivity provisions speak in terms of the Administration of Worker's Compensation Benefits and retaliation just seems like it's something else. It's not. You don't ordinarily think about a worker's compensation benefit scheme as encompassing retaliation. You don't have the employer paying out benefits in order to deal with retaliation. You have the employer paying out benefits to deal with on-the-job injury. I think in that circumstance, we look at the legislative intention of the DBA. What was DBA created for? The DBA was created to provide benefits to civilian employees which Mr. Sickle and Mr. Elliott were civilian employees at the time, working for government contractors in military installations overseas. Overseas, there are no state remedies. There are no remedies. Without the DBA, there's no federal or state remedies available to those employees who were injured on the job or retaliated against or denied benefits. The DBA extended the Longshore Harbor Worker's Compensation Act to them and contractors, including the ones that we have here, are paying upwards of millions of dollars into this DBA. Why? Because it's quid pro quo, like John said. Just one thing then. That's not express preemption. The argument that you're making now isn't under the terms of the exclusivity provisions. It may be an argument, but it's not an argument about express preemption. We make several arguments, as Judge Brown-Jackson did. We think the language expressly says it's exclusive, but even if you don't agree with that, we would say there's at least field preemption. The language says it's expressly exclusive, but the question is expressly exclusive as to what? It just seems like the language itself doesn't cover this. There may be other principles that kick in under your view that expand it. Conflict preemption, something like that. But in terms of express preemption, I don't read the exclusivity provisions to cover this, and I don't read Brink as having held that it covers this. Correct. But Brink did hold, given the similar 948A claims, that other claims that were brought that were dependent on that claim, which is like the claims that we have here, are also preempted I don't think they're like the claims that we have here, because I didn't see that in Brink there was any state law claim that spoke in terms of retaliation. I thought they were all state law claims that had to do with the dissemination of benefits, of workers' comp benefits, and that the scheme had gone awry and workers' comp benefits weren't being paid out in the right way. But it didn't have to do there was no state law analog at least we didn't discuss it in our opinion, what's being asserted here, which is a state law grounded claim of retaliation. Well, I see I'm running out of time, but let me conclude by going back to the original point is they fashioned their complaint as a 948A claim, so they can't have the separate retaliation claim. They are saying we are subject to the DBA, we get benefits under the DBA. They cannot contradict that and abandon that because oh wait, maybe there's something I don't know why they can't, because they can say they can say we have a 948A claim. That 948A claim might have all kinds of problems associated with it, including that as your opponent has already acknowledged they didn't go through the normal procedures for a 948A claim, so under Brink, under the exhaustion part of Brink, they're out under the 948A claim. But they could still have a state law claim that is grounded in the same sorts of stuff that's bound up in a 948A claim, i.e. retaliation and unfair action by the employer in response to somebody who's trying to get benefits. Brink doesn't tell us that that's preempted. And I would agree with the district court, which looked at it both ways. Either they are bringing a 948A claim or they're not, under either scenario because this backdrop... I guess I'm saying they could be doing both. It doesn't seem it has to be an either-or provision, principle. They could say I'm bringing a 948A claim, maybe that 948A claim is out because of a failure of exhaustion and then they could say no, but I'm not limiting myself to a 948A claim. I'm also bringing state law claims that are effectively alleging unfair action based on retaliation. The argument as to those is that they're not preempted because the exclusivity provisions just don't cover those. And we would submit that the DBA is very different than other statutes that may allow the alternative cleaning and that there's no election of remedies. You have to go through the Department of Labor if you're bringing a claim that's either grounded in the title as a 948A or DBA action or grounded in that. We would submit that the express language does include, is broad enough to encompass that. And even if not, that legislative intent of the DBA was to extend immunity and predictability and outcomes to employers who are paying millions of dollars into this insurance for employees who are injured overseas. Thank you. All right, we'll give you a couple of minutes. Thank you, Ron. To the point that Judge Millett brought up about Mr. Sickle, he filed no report. He had a job as a medic and he had to fill out reports as part of that job if somebody came to the medic's office with an injury, even if it wasn't work-related. They handed out medications and so on. So he had to fill out a report. That report existed. He didn't create it for a case. He did fax it over to Mr. Elliot, but there was no claim filed at that time. So he had nothing to do with the process. And there was never a hearing before a judge, and there was never a hearing before a board. There was an informal conference, as they call it, before the Office of Workers' Compensation Programs. And the way that these cases work, you file in New York and then it gets sent out to the various places in the country and districts that are nearest to where the claimant lives. And this went down to the Longshore office in Houston. So there was a telephone call about the case. The employer and the carrier did not oppose benefits at that point. So there was no assertion of fraud in the case. There was a comment to myself about it, which is noted in the complaint in this case. The comment was that we think he faked an injury. But then they didn't do anything about it. So there was no claim in the case about that. And Mr. Sickle never testified or came close to testifying. Likewise, Mr. Elliot was not qualified to continue working. He had a herniated disc. He had an MRI done and then he had back surgery. So he doesn't fall under 948A. And although perhaps inartfully drafted, the complaint is not trying to bring a 948A claim before the Department of Labor or using its provisions for remedies, but rather state law. I don't know about inartfully drafted. Your complaint, this is page 19 of the Joint Appendix. Count 1. Discrimination and retaliatory discharge. 33 U.S.C. 948A. I agree, Your Honor. It says that. But the intent is to utilize that statute as the basis of a public policy. Not a cause of action that is in the U.S. District Courts with original jurisdiction. We didn't believe that then. I don't believe it now. The first prayer for relief on page 24 is judgment under 948A. You have to look at the reality of what your complaint says. It says that. I agree. And if this is reversed and remanded, we certainly will ask to amend so that we make it clear we're not trying to proceed under a law that doesn't provide for original jurisdiction before the Article III courts. So that was not our intent. Our intent was to bring alternative claims under state law based upon an express policy of the United States. I think that the discussion about... What's the basis for jurisdiction under all these state law claims? I'm sorry, could you repeat that? What's your basis for jurisdiction over these state law claims? We had diversity of jurisdiction, I believe. You alleged the citizenship. I'd have to go back and look at the complaint, Your Honor. I cannot honestly recall the basis of jurisdiction. There was a challenge to the jurisdiction, and that was set aside. That was personal jurisdiction, wasn't it? I think there was a personal jurisdiction. That's correct. It was personal. The conflict preemption that the District Court also relied upon is inappropriate because there is no conflict. Again, as I noted to the Court, all the causes of action that exist in federal law for agencies, such as ADA, Title VII, the Jones Act, other acts that one can bring, even when there's an existing Longshore or DBA case, these can often come into conflict. So in a Title VII case, you could have a personal injury that happened because somebody was retaliated against and sexually harassed, as I have a client like that. She has a DBA case, we just settled it. We also have a Title VII claim pending in federal court. That court can make a decision that, no, she wasn't retaliated against, no, it wasn't valid, no, she didn't really suffer these things. DBA can say the opposite. This happens all the time. You have Social Security disability determinations of total disability that differ in standards from those in the DBA, and yet those can coexist in the same case for the same injuries. So, I believe that Your Honors have adequately addressed this issue of conflict and field preemption and express preemption. This statute simply does not preempt the claims of common law, contract, or wrongful discharge in this case. And the basic unfairness of the ruling below is that Mr. Elliot could not proceed under 948A because he did not qualify. And also, Mr. Sickle, who had no remedy because there was no compensation claim that he had and he was not testifying or about to testify within any reasonable meaning of the term. So the Court should reverse and give them a trial on the merits because the claims here are completely outside the ambit of the DBA. Thank you, Your Honors. Thank you. We'll take the case under advisement.
judges: Rogers, Srinivasan, Millett